IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN P. HAGEMIER,                      ) | |
|                Plaintiff,       ) | |
| v.                                                       ) | Case No. CIV-21-35-SPS |
| KILOLO KIJAKAZI,                       ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1]             ) | |
|               Defendant.     ) | |

## OPINION AND ORDER

The claimant John P. Hagemier requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-eight years old at the time of the administrative hearing (Tr. 32). He completed tenth grade and has previously worked as an auto salesperson and salesclerk (Tr. 22, 175). The claimant alleges that he has been unable to work since August 1, 2018, due to degenerative disk and joint disease, arthritis, plantar fasciitis, fibromyalgia, hearing loss, and anxiety (Tr. 174).

### Procedural History

On March 1, 2019, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Don A. Harper conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 16, 2020 (Tr. 12-23). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that it must be indoor work only and that the claimant may balance, stoop, and kneel. Additionally, he found that the claimant could have occasional interaction with the public, coworkers, and supervisors (Tr. 16). The ALJ then

concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, marker, router, and mail clerk (Tr. 22-23).

## Review

The claimant's sole contention of error is that the ALJ erred in his consistency analysis as to the claimant's complaints, particularly with regard to his pain. This contention does not have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of lumbar degenerative disc disease, cervical degenerative disc disease, generalized arthritis, asthma, obesity, depression, and anxiety (Tr. 14). The relevant medical evidence reflects that the claimant complained of low back pain in April 2019, and exhibited decreased range of motion, stiffness, rigid posture, and gait, as well as a positive right straight leg raise test (Tr. 258-259). The claimant presented for follow-up treatment of low back pain, neck pain, numbness in arms and legs, headache, and tinnitus on June 29, 2018 (Tr. 240). Dr. Robert Tibbs reviewed MRIs with him which showed a C6-7 broad-based disc herniation causing bilateral foraminal stenosis, three-level disc disease from L3-4 through L5-S1, right greater than left disc herniation at L5-S1 causing foraminal stenosis, posterior annular tear at L4-5, and a degenerative disc at L3-4 (T. 242-251). Dr. Tibbs recommended a series of surgeries for these impairments (Tr. 242). Treatment notes from November 2019 again reflect the claimant had degenerative musculoskeletal changes, decreased range of motion, and a stiff arthritic gait (Tr. 351).

On May 6, 2019, the claimant presented to Dr. Christopher Sudduth, M. D., for a physical examination (Tr. 270-277).  The claimant had a symmetric and steady gait and no muscle spasms, but he had pain on range of motion, decreased range of motion of the back, and positive straight leg raise tests bilaterally (Tr. 272-273, 277).  The claimant was unable to squat and rise from that position or hop on either foot, but he could rise from a sitting position, heel/toe walk, perform tandem walking normally, and stand and balance (Tr. 273).  Dr. Sudduth noted the claimant had severe decreased range of motion of the lumbar spine with lumbar spine pain on range of motion assessment and decreased range of motion of the cervical spine with pain (Tr. 273-277).

State reviewing physicians found initially and upon reconsideration that the claimant could perform light work, except he could frequently kneel and crawl, and only occasionally climb ramps/stairs/ladders/ropes/scaffolds and stoop, but he was unlimited in the ability to balance and crouch (Tr. 58-59, 73-75).  As to his mental impairments, state reviewing physicians determined initially and on reconsideration that his mental impairments were nonsevere (Tr. 55-56, 71-72).

At the administrative hearing, the claimant testified that he could use a shower, but not a bathtub, and that even in the shower he struggled to wash his neck (Tr. 34).  As to his back, he testified that his main problem was pain that radiated into his legs and arms, causing tingling, and that a series of injections had not helped (Tr. 35, 37-38).  He stated that his doctor wanted to do surgery, but that he could not afford it and he was also scared to have the surgery (Tr. 35). He stated that the tingling went from his hips to his feet, also down his arms into his pinky and ring fingers, and all extremities were made worse by

sitting (Tr. 38-39).  He further testified that "most" of his joints were arthritic, for which he was prescribed medication (Tr. 35-36).  Additionally, he stated that he has shortness of breath even when sitting (Tr. 41).  Finally, he indicated that laying down is the most comfortable position for him, and that he struggles with sleep due to his pain levels in his back and neck (Tr. 44-45).

In his written decision at step four, the ALJ thoroughly summarized the claimant's hearing testimony and the medical evidence in the record, including some evidence prior to his alleged onset date of August 1, 2018 (Tr. 16-22).  The ALJ specifically noted the objective test findings, Dr. Tibbs's treatment notes, and Dr. Sudduth's consultative examination report (Tr. 17-19).  The ALJ found the claimant's subjective statements "about the intensity, persistence, and limiting effects of his symptoms [] not entirely consistent with the longitudinal treatment history and record as a whole." (Tr. 20).  In support, he acknowledged the objective findings regarding the claimant's severe degenerative disc disease but noted that he largely demonstrated a normal gait and muscle strength, did not require any assistive devices, and had undergone no further treatment and no primary care treatment for chronic pain since August 2019 (Tr. 20-21).  Additionally, he noted the claimant's asthma diagnosis but that it was mild and intermittent with no cardiac involvement, and that the claimant was prescribed mental health treatment in the form of medication but that he demonstrated largely normal mood and affect and had refused mental health referrals (Tr. 21).  The ALJ then found the state reviewing physician opinions as to his physical impairments to be persuasive, but that the reviewing opinions as to his

mental impairments were not persuasive because he found they *were* severe impairments (Tr. 21-22). He then determined that the claimant was not disabled (Tr. 23).

The claimant now contends that the ALJ erred in analyzing his subjective statements, particularly as related to his pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3]   Tenth Circuit precedent agrees but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67 (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the

---

[3]   SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4]   Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

As outlined above, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. In making such conclusions, the ALJ noted the objective findings from the MRIs, X-rays, and pulmonary function tests, as well as the treatment notes and Dr. Sudduth's examination, but ultimately determined that the claimant's complaints of severity were not supported by this objective evidence. In making these findings, the ALJ specifically addressed the claimant's chronic pain due to degenerative disc disease and generalized arthritis, asthma, anxiety and depression, and obesity. Although perhaps a sparse opinion as to the consistency evaluation, the ALJ here sufficiently linked his subjective statement analysis to the evidence and provided specific

reasons for the determination. Additionally, there is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation is entitled to deference. *See Casias*, 933 F.2d at 801.

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The

decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

    **DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**